**SOUTH ROAD ASSOCIATES,**
Plaintiff–Appellant,

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION,**
Defendant–Appellee.

**No. 1322, Docket No. 99–9072**

United States Court of Appeals,
Second Circuit.

Argued: May 8, 2000

Decided: June 20, 2000

Robert J. Alessi, Albany, New York (Susan L. Taylor, LeBoeuf, Lamb, Greene & MacRae, L.L.P., on the brief), for appellant.

Nancy MacKimm, Dallas, Texas (Mark R. Seiden, Jones, Day, Reavis & Pogue, New York, New York, on the brief), for appellee.

Before: KEARSE and JACOBS, Circuit Judges, and KORMAN, Chief District Judge.[*]

JACOBS, Circuit Judge:

South Road Associates ("SRA") as landlord has sued International Business Machines Corporation ("IBM"), the former long-term lessee of its property, under the citizen-suit provisions of the Resource Conservation and Restoration Act ("RCRA"), 42 U.S.C. § 6901 *et seq.*, alleging that IBM's storage of chemical wastes on the site resulted in contamination of the surrounding soil, bedrock and groundwater, and amounted to a violation of RCRA's open-dumping provisions. SRA appeals from the judgment of the United States District Court for the Southern District of New York (McMahon, *J.*) granting IBM's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). We affirm.

Citizen suits under RCRA can be brought only against persons engaged in RCRA violations that are ongoing. Challenged on that ground in IBM's motion to dismiss, SRA argued that the continued presence—or the present leaching—of contaminants deposited in the past amounts to an ongoing violation. The district court disagreed, ruled (in essence) that ongoing conduct by the defendant is an element of a citizen suit under RCRA, and dismissed for failure to state a claim.

On appeal, SRA argues that the district court misreads RCRA to impose a blanket requirement that the defendant be engaged in ongoing conduct. We agree that the district court's holding was overbroad, and decide that a requirement of present conduct must be found in the wording of the specific provision alleged to be violated. After performing that analysis, however, we affirm because, as the district court ruled, this complaint fails to state an ongoing violation of RCRA.

## BACKGROUND

Because the district court dismissed SRA's complaint on the pleadings, we assume that all of SRA's factual allegations are true and draw all reasonable inferences in SRA's favor. *See Hayden v. County of Nassau,* 180 F.3d 42, 47 (2d Cir.1999); *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir.1996).

### A. Facts

From the mid–1950s until spring 1994, IBM leased and occupied a parcel of real property in Poughkeepsie, New York. South Road Associates acquired the property around 1979. In 1981, SRA and IBM entered into a five-year lease, which was renewed for additional periods until it was allowed to expire on February 28, 1994. *See* Complaint ¶¶ 6–10, *South Road Assocs. v. IBM,* No. 99 CV 0664(CM) (S.D.N.Y. Jan. 29, 1999) ("Compl.").

IBM used the property for manufacturing, parts-cleaning, storage, shipping and other commercial operations. RCRA classifies certain substances as "solid wastes" in 42 U.S.C. § 6903(27), and classifies a subset of solid wastes as "hazardous wastes" in 42 U.S.C. § 6903(5). At the Poughkeepsie site, IBM used some chemicals classified as solid wastes and some that were also classified as hazardous wastes. IBM stored these solid and hazardous wastes on the property, some of them in underground storage tanks that are alleged to be leaking the wastes into

[*] The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

the surrounding soil, bedrock and groundwater. *See* Compl. ¶¶ 12–18.

IBM first discovered the leakage in or about 1981. An internal investigation from 1982 to 1984 showed contamination of soil, bedrock and groundwater. In 1987, the New York State Department of Environmental Conservation ("NYSDEC") declared the site to be a Class 2 environmental hazard, *i.e.*, a "significant threat to the public health and environment," pursuant to N.Y. Envtl. Conserv. Law § 27–1301 *et seq.* Compl. ¶¶ 18–21.

During the 1980s, beginning before the intervention of the NYSDEC, IBM conducted a remediation program to reduce contamination on the property. SRA alleges that this remediation program:

> (1) failed to discover (or remedy) all of the contamination, so that contamination levels continued at the time of the suit to exceed the maximum contaminant levels ("MCLs") allowable under 40 C.F.R. § 257.3–4(a), (c)(2)(i)-(ii); and

> (2) used contaminated soil as fill in a soil excavation project that was part of the remediation program, thereby worsening rather than fixing the contamination.

In March 1993, however, IBM successfully petitioned the NYSDEC to modify the status of the site from Class 2 to Class 4, which relieved IBM of any state-imposed environmental obligation at the site except for continued monitoring. At the time of the filing of this suit, IBM continued to monitor the site under the New York State Inactive Hazardous Waste Disposal Site Program. *See* Compl. ¶¶ 22–26.

SRA retook possession of the property on March 1, 1994. *See id.* at ¶ 31.

### B. Proceedings in the district court

SRA sued IBM in December 1998, alleging (1) a violation of RCRA's statutory and regulatory prohibitions against "open dumping," (2) common law breach of contract, and (3) common law unjust enrichment. The action was commenced in New York State Supreme Court, Dutchess County, and timely removed by IBM to federal court.

After removal of the action, IBM filed a motion to dismiss. After oral argument, Judge McMahon dismissed the federal claims pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that current acts of contamination must be pleaded to maintain a citizen suit under RCRA, and that the complaint pleads no such allegation against IBM. The district court declined to exercise jurisdiction over the pendent state claims. SRA appeals.

## DISCUSSION

### A. Standard of review

■ We review *de novo* the district court's dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir.2000). To survive a motion for dismissal under Rule 12(b)(6), the complaint must allege facts that, if true, would create a judicially cognizable cause of action. *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir.1999).

### B. RCRA citizen suits

SRA brought its federal claims in the form of a citizen suit under RCRA, pursuant to 42 U.S.C. § 6972(a)(1)(A),[2] which provides that "any person may commence a civil action on his own behalf" "against any person ... who is alleged to be *in violation of* any permit, standard, regulation, condition, requirement, prohibition, or order" under the solid waste disposal provisions. *Id.* (emphasis added).

In the course of its oral dismissal of SRA's complaint (and at oral argument on

---

**2.** SRA asserted claims under both RCRA citizen-suit provisions, 42 U.S.C. § 6972(a)(1)(A) and 42 U.S.C. § 6972(a)(1)(B). In response

to IBM's motion to dismiss, SRA conceded that the complaint stated no claim for relief under § 6972(a)(1)(B).

the motion), the district court read this Court's decision in *Connecticut Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305 (2d Cir.1993) ("*Remington Arms*"), to mean that a defendant is not in violation of § 6972(a)(1)(A)—*i.e.*, is not "in violation of" RCRA's enforcement scheme—unless the defendant is still actively engaged in contaminating the site. The district court thus treated as dispositive that (according to the complaint) IBM's lease and occupancy ended early in 1994, and that at the time of suit IBM was no longer doing anything at the site other than monitoring.

*Remington Arms* was a citizen suit under the same RCRA section invoked by SRA, 42 U.S.C. § 6972(a)(1)(A), and under the substantially identical provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1). The Connecticut Coastal Fishermen's Association sued the Remington Arms Company, which owned a gun club on Long Island Sound, alleging that the club's land and the waters of the Sound had been polluted with lead and clay by 70 years of skeet shooting. *See Remington Arms*, 989 F.2d at 1308–10. The RCRA claim was that Remington was operating a hazardous waste storage and disposal facility without a permit, in violation of 42 U.S.C. § 6925(a). *Remington Arms* determined that the Fishermen's Association had no cognizable RCRA claim because the property was no longer used for shooting skeet, but adopted no blanket requirement that current action be alleged. *See id.* at 1315–16. Instead, *Remington Arms* considered each allegation of unlawful disposal and storage and tested its sufficiency against the wording of the statute:

(1) As to whether the defendant was operating a hazardous waste *disposal* facility, we ruled that since shooting had ended, the "disposal" of hazardous waste was over as well. Thus the disposal claim pleaded a violation that was "wholly past" and therefore barred. *Id.* at 1315 (quoting *Gwaltney of Smithfield,*

*Ltd. v. Chesapeake Bay Found.*, 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987)) (internal quotation marks omitted).

(2) As to whether Remington was "operating a hazardous waste *storage* facility," we ruled that the requirement of an ongoing violation was satisfied because "the alleged 'violation' would continue as long as the lead shot and clay targets are 'stored' in the waters of Long Island Sound," *Remington Arms,* 989 F.2d at 1315, but dismissed the claim nevertheless because the statutory definition of "storage" made it a term of art limited to "interim measure[s]" that therefore does not include the act of leaving waste "with no intention of taking additional action." *Id.* at 1316 (citing 42 U.S.C. § 6903(33); 40 C.F.R. § 260.10).

As this summary illustrates, *Remington Arms* employed no blanket test for whether a defendant is engaged in an ongoing violation of RCRA; *Remington Arms* instead performed a close reading of the allegations against the statute.

If, as the district court found, current action were a prerequisite for a citizen suit under RCRA, the failure to allege current skeet shooting would have required that storage and disposal be treated identically. Instead, the Court noted that if it were not for the statutory definition of "storage" as an interim (rather than permanent or indefinite) deposit, the violation of the storage prohibition could continue indefinitely without any continuing action by the defendant. *See id.* at 1315–16. The storage claim was dismissed not because there is a requirement of current action for RCRA citizen suits, but because Remington's actions fell outside the specific statutory and regulatory definitions of "storage." *See id.* (citing 42 U.S.C. § 6903(33); 40 C.F.R. § 260.10).

■ Thus a defendant's current activity at the site is not a prerequisite for finding a current violation under 42 U.S.C. § 6972(a)(1)(A). The inquiry required by

*Remington Arms*—the same inquiry required by § 6972(a)(1)(A)—is whether the defendant's actions—past or present—cause an ongoing violation of RCRA. That question turns on the wording of the prohibition alleged.

### C. Open dumping

SRA argues that the complaint pleads an ongoing violation of RCRA's open-dumping provisions, notwithstanding IBM's departure from the site, because continuing activity need not be alleged in order to plead that a defendant is "in violation of" the open-dumping provisions. Following Judge Cardamone's lead in *Remington Arms*, we examine the statutory text to see whether current action is required to plead a current violation.

■ SRA alleges that IBM is in violation of 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.3–4(a), each of which constitutes a part of RCRA's prohibition on open dumps and open dumping.[3] In particular, SRA alleges that IBM is in violation of § 257.3–4 because its actions have increased contamination to a level exceeding the maximum contaminant levels under § 257.3–4. *See* 40 C.F.R. § 257.3–4(a), (c)(2)(i)-(ii); 40 C.F.R. pt. 257 app. I. These continuing "MCL exceedances" themselves, according to SRA, constitute continuing violations of RCRA. We disagree.

### 1. Statutory requirements

RCRA's citizen-suit provision permits a suit "against any person . . . who is alleged to be in violation of any . . . regulation [or] prohibition" under RCRA. 42 U.S.C. § 6972(a)(1)(A). The open issue is whether IBM's actions constitute present violations of those regulations or prohibitions, within the meaning of § 6972(a)(1)(A) (and as construed by *Remington Arms* ). That

is because 40 C.F.R. § 257.3–4(a) is a "regulation" under RCRA, and 42 U.S.C. § 6945(a) (set forth in part below) is a "prohibition" under RCRA:

> *Upon promulgation of criteria under section 6907(a)(3)* of this title, any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited, except in the case of any practice or disposal of solid waste under a timetable or schedule for compliance established under this section. The prohibition contained in the preceding sentence shall be enforceable under section 6972 of this title against persons *engaged in the act of open dumping.*

42 U.S.C. § 6945(a) (emphasis added). Thus SRA can maintain this action only if IBM was at the time of filing "engaged in the act of open dumping."

"Open dumping" is defined in two places. First, it is among RCRA's statutory definitions in 42 U.S.C. § 6903. Second, by virtue of the "promulgation of criteria under section 6907(a)(3)," 42 U.S.C. § 6945(a), we consider the definition in RCRA regulations.

The statute defines an "open dump" by elimination as "any facility . . . where solid waste is disposed of *which is not* a sanitary landfill which meets the criteria promulgated under section 6944 of this title *and which is not* a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14)(emphases added). The chemicals alleged to be on the property are "solid waste" within the definition of 42 U.S.C. § 6903(27), and the process by which those chemicals contaminated the local environment falls within the statutory definition of "disposal,"[4] 42 U.S.C.

---

3. Because we see no functional difference between "open dump" and "open dumping," and because the statutory and regulatory schemes do not appear to differentiate between the two in any meaningful way, we treat the two as the same.

4. Disposal is defined as:
   the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof

§ 6903(3). The question becomes whether SRA's property falls within one of the two statutory exceptions emphasized above in the quoted text of § 6903(14). We put aside for now (and ultimately decide that we need not reach) the question of whether SRA's Poughkeepsie site is a "facility for the disposal of hazardous waste," and instead examine the other exception in the definition of open dumping, for facilities that meet the criteria promulgated on the authority of § 6944.

Subsection 6944(a) mandates the promulgation of "regulations containing criteria for determining which facilities shall be classified as sanitary landfills and which shall be classified as open dumps." 42 U.S.C. § 6944(a).

Thus both the statutory prohibition on open dumps and dumping (§ 6945(a)) and the statutory definition (§ 6903(14)) define "open dump" by reference to regulatory criteria promulgated by the Environmental Protection Agency ("EPA"). Though SRA alleges a violation of § 6945, the wording of that section (and the statutory provisions implicated thereby) does not say whether an ongoing violation of the open-dumping provisions requires ongoing conduct. We therefore look to the regulatory criteria for classifying solid waste disposal facilities and practices.

## 2. Regulatory criteria

Promulgated on the authority of 42 U.S.C. §§ 6907(a)(3) and 6944(a), 40 C.F.R. pt. 257 lists criteria for determining what is, and what is not, an open dump. Facilities and practices that fail to fulfill the criteria delineated in §§ 257.1 through 257.4 are considered (respectively) open dumps and open dumping. *See* 40 C.F.R. § 257.1(a)(1)-(2). Facilities that satisfy those criteria are considered sanitary landfills. *See* 42 U.S.C. § 6944(a).

may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

Because open dumps are prohibited by § 6945(a), and because failing any criterion listed in §§ 257.1 through 257.4 automatically renders a facility an open dump, *failure to satisfy any one criterion itself violates RCRA.* And because non-compliance with any one of the "Criteria for Classification of Solid Waste Disposal Facilities and Practices," 40 C.F.R. pt. 257, will cause one to be "in violation of ... [a] regulation, condition, requirement, [or] prohibition" of RCRA and therefore subject to suit under § 6972(a)(1)(A), these criteria operate as independent prohibitions under RCRA.

The complaint alleges that at the time of suit, IBM was in violation of 40 C.F.R. § 257.3–4, which provides (in relevant part) that "[a] facility or practice shall not contaminate an underground drinking water source beyond the solid waste boundary." 40 C.F.R. § 257.3–4(a). We assume that SRA's complaint adequately pleads the existence of an "underground drinking water source" and chemical expansion beyond the "solid waste boundary," as respectively defined in 40 C.F.R. § 257.3–4(c)(4)(i)–(ii) and 40 C.F.R. § 257.3–4(c)(5).

According to SRA, it is the fact of M.C.L. exceedances—caused by IBM's past acts, but still present at the site and causing groundwater contamination—that constitutes a violation of the provision requiring that a facility or practice "not contaminate" the groundwater. We conclude that that is not enough. The term "contaminate" is defined: " '[c]ontaminate' means *introduce* a substance that would cause" M.C.L. exceedances. 40 C.F.R. § 257.3–4(c)(2) (emphasis added). What is prohibited by the statute and the regulation (read together) is the act of introducing a substance that causes M.C.L. exceedances, not the action of the M.C.L. exceedances on the environment.

*Accordingly, the complaint does not plead that IBM is engaged in the forbidden act of open dumping unless the com-*

42 U.S.C. § 6903(3).

plaint alleges that IBM is introducing substances that would cause exceedances.

### D.  The alleged violation

The final question is whether the facts alleged by SRA, if true, would state a judicially cognizable claim for a violation of 40 C.F.R. § 257.3–4(a)—that is, whether SRA, notwithstanding its defective theory of the case, nevertheless alleges that IBM at the time of filing continued to introduce substances that made the M.C.L. exceedances worse.  After careful examination of the complaint and SRA's brief, we believe SRA has failed to do so.

At oral argument, counsel for SRA appeared to claim that SRA's complaint *does* allege continuing introduction of solid wastes onto the property, possibly in connection with IBM's remediation of the site. We can find no such allegation.  SRA failed to present such a theory at oral argument before the district court, and nowhere in its complaint or its brief does SRA allege that introduction of waste onto the property was ongoing at the time of filing:

> (i) The complaint's only references to the introduction of wastes are localized to dates preceding the filing of the complaint.  *See* Compl. ¶¶ 13, 15, 16, 18.

> (ii) The complaint's discussion of the present pollution of the property references no continuing introduction of solid and/or hazardous wastes.  *See id.* ¶¶ 22–24, 27, 28, 48.

> (iii) At best, the complaint alleges past introduction and continuing M.C.L. exceedances.  *See id.* ¶¶ 24, 27, 28, 42, 54.

It is telling that SRA's brief expressly equates the exceedances with an ongoing violation:

> In this case, SRA alleged that IBM was "in violation of" RCRA's statutory "prohibition" and regulatory "requirement[s]" because it caused ongoing exceedances of MCLs. *It is the M.C.L. exceedances that constitute the "ongoing*

*violation"—no further human conduct is required.*  The ongoing violation would end when the MCLs are within permissible levels (and unlikely to be repeated).

SRA Br. at 10 (alteration in original; emphasis added); *see also id.* at 14 ("[T]he district court failed to perceive that the ongoing 'violation'—the exceeded MCLs—does not depend upon ongoing 'conduct.' " (footnote omitted)); *id.* at 19–20 ("Because the MCLs for certain hazardous and solid wastes were exceeded at the time SRA filed its Complaint, IBM was (and continues to be) 'in violation of' a RCRA prohibition . . . .").

The complaint alleges that introduction of contaminating wastes took place during IBM's lease, not afterward.  This historical act cannot support a claim for violation of 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.3–4(a).

█  At oral argument SRA appeared to argue that IBM continued to "introduce" wastes simply by moving those wastes from one place to another during its state-ordered remediation program.  But the complaint characterizes the then-ongoing remediation solely in terms of monitoring, not active attempts to decontaminate the site.  *See* Compl. ¶¶ 25, 26.  In any event, the movement of soil (with or without contaminants) from here to there pursuant to a state-sponsored or state-authorized plan or program does not constitute "introduction" for the purposes of RCRA.

### CONCLUSION

The judgment is affirmed for the reasons stated.  We therefore need not decide (1) whether SRA's citizen suit was barred by the exception (in 42 U.S.C. § 6903(14) and 40 C.F.R. § 257.1(c)(8)) for hazardous waste disposal facilities, and (2) the validity of SRA's state law claim for unjust enrichment, over which the district court

permissibly declined to exercise jurisdiction.