**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 15, 2003**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-61057
Summary Calendar
_____

CHARLES B. OWENS; SALLY L. OWENS,

                                        Petitioners-Appellants,

versus

COMMISSIONER OF INTERNAL REVENUE,

                                        Respondent-Appellee.

----------------------
Appeal from the United States Tax Court
(672-01)
----------------------

BEFORE DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

    Petitioners-Appellants Charles B. Owens ("Owens") and Sally L. Owens, husband and wife, (collectively, "Petitioners") filed a motion in the United States Tax Court under § 7430 of the Internal Revenue Code ("IRC") of 1986[1] to recover from Respondent-Appellee Commissioner of Internal Revenue ("Commissioner") the administrative and litigations costs that they had incurred. Petitioners had successfully sued the Commissioner in that court

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

    [1] References to "Section" or "§" shall be to the IRC.

for a redetermination of an income tax deficiency asserted by the Internal Revenue Service ("IRS") in connection with 1994 income taxes. Petitioners now appeal the Tax Court's judgment to the extent it denied recovery of a portion of their claim under § 7430. We affirm the uncontested portion of the Tax Court's judgment awarding Petitioners $1,449.58 on the issue of penalties improvidently sought by the Commissioner, but we reverse the Tax Court's judgment to the extent that it rejected the balance of Petitioners' total claim, viz., the portion that the Tax Court attributed to the issue of discharge-of-indebtedness income. We therefore remand the case to the Tax Court with instructions to modify its judgment to include the amount of $8,697.49 as calculated but rejected by the court, plus additional sums, pursuant to § 7430, for recoverable costs incurred by Petitioners in this appeal and those that they will incur in proceedings in the Tax Court on remand.

## I. Facts and Proceedings

The Tax Court noted, and none dispute on appeal, that there is no disagreement on the operative facts underlying this case. Thus, the following facts come either from stipulations or uncontested evidence.

Owens obtained a loan ("the Owens loan") from a bank that subsequently failed. The Owens loan was one of a number that the FDIC acquired from that failed bank, which loan was one that was managed for the FDIC by AMRESCO. In 1994, the FDIC issued Owens a

2

Form 1099-C, Cancellation of Debt 1994. This form specified October 6, 1994 as the date of cancellation of the Owens loan and listed the total amount for which the loan was canceled, including interest. Certain that the 1099-C had been issued in error, Petitioners dutifully reported the amount set forth on that form as debt cancellation income on their tax return for 1994 but "zeroed-out" that figure with an offsetting entry labeled "ERRONEOUS 1099-C — DEBT NOT DISCHARGED" (Petitioners eventually reported income from their discharge of this indebtedness for the later year in which the statute of limitations for collection expired).

In the course of its examination of Petitioners' 1994 income tax return, the IRS issued a summons to the FDIC for documentation relating to the Owens loan. The data received by the IRS in response included a copy of a "Dormant Account Status Approval Form" regarding that loan, effective October 6, 1994, bearing the statement, "This memorandum is a <u>request</u> for Authorization to write off the remaining balance" of the Owens loan (emphasis added). This form also bears the statement "Not Economic to Pursue and Unsaleable," together with a narrative of the loan's history, collection efforts, and unavailability of assets, as well as the conclusion that "[i]t does not appear to be cost effective to pursue a collection lawsuit against the obligor." This dormant account form had apparently been prepared by an agent of AMRESCO and is stamped "REQUEST APPROVED BY OVERSIGHT COMMITTEE SPECIAL ASSET BANK" on October 20, 1994. The documentation furnished to

3

the IRS by the FDIC also included copies of two letters exchanged between Owens and the principal of AMRESCO, one dated November 1, 1994 and the other dated November 7, 1994.  Neither these letters nor any other instrument obtained by the IRS expressly states that the Owens loan was canceled; and there is no evidence that the FDIC or AMRESCO contacted Petitioners after November 7, 1994. Significantly, the record is also devoid of evidence that the Owens loan was ever actually canceled by or on behalf of the FDIC.

Even more to the point of this § 7430 case is the absence of any testimony or documentary evidence whatsoever that the IRS ever attempted to contact representatives of AMRESCO or the FDIC, either to confirm or refute the contention, continually advanced by Petitioners to the IRS, that the FDIC had issued the subject Form 1099-C in error, and that, in fact, the Owens loan had never been canceled.  Without making any effort to run that key question to ground, and instead apparently relying solely on the contested Form 1099-C and on erroneous inferences that it drew from one or more of the instruments obtained from the FDIC, the IRS stuck to its conclusional position that the Owens loan had been canceled in 1994, producing discharge-of-indebtedness income to Petitioners in that year, and resulting in a deficiency in the amount of income taxes reported on their return for 1994.

After extensive administrative practice failed to resolve this controversy, the IRS issued a deficiency letter in November, 2000, asserting that Petitioners owed additional income tax plus a 20%

4

accuracy-related penalty under § 6662 for negligence or disregard of rules or regulations. In January, 2001, Petitioners filed a petition in Tax Court seeking redetermination of the deficiency asserted by the IRS. The Commissioner answered in March of that year, denying error. The Tax Court scheduled the trial of the matter for early December, 2001, but shortly before the trial date the Commissioner completely changed his position and advised Petitioners that he would concede the entire case, stipulating to that effect in the Tax Court. With Petitioners reserving their right to file for relief under § 7430, the Tax Court dismissed their suit on the basis of the Commissioner's concession.

On motion of Petitioners for relief under § 7430, the Tax Court awarded them $1,449.58, which it attributed to costs they incurred in connection with penalties improvidently sought by the Commissioner under § 6662. After adjusting the $9,529.16 balance of Petitioners' claim to $8,697.49, however, the Tax Court rejected this entire balance of Petitioners' claim in connection with the discharge-of-indebtedness issue, reasoning that, despite having prevailed in their deficiency redetermination litigation and having correctly asserted that the Commissioner's position with respect to the penalty issue was not "substantially justified" within the meaning of § 7430(c)(4)(B)(i), the Commissioner was nevertheless substantially justified with respect to the discharge-of-indebtedness issue.

5

Petitioners appealed the denial of the portion of their § 7430 claim that is based on the discharge-of-indebtedness issue. As the Commissioner did not cross-appeal the Tax Court's award to Petitioners in connection with the penalty issue, however, that part of the court's judgment stands.

## II. Analysis

A. <u>Standard of Review</u>

When a taxpayer's entitlement to recover costs under § 7430 turns on a trial court's determination that the position of the Commissioner in the underlying litigation was or was not "substantially justified" for purposes of § 7430(c)(4)(B)(i), we review such determination for abuse of discretion.[2] One way that a trial court can abuse its discretion is to ground its exercise thereof either in errors of law or clearly erroneous facts.[3] More specifically, the Commissioner bears the burden of proving by a preponderance of the evidence that a deficiency notice is grounded in fact and law; if such a notice is not thus grounded, it is "clearly erroneous" as a matter of law, making reliance on such a notice unjustified, substantially or otherwise, and in turn making

---

[2] <u>Hanson v. Commissioner</u>, 975 F.2d 1150, 1152-53 (5th Cir. 1992).

[3] <u>See</u>, <u>e.g.</u>, <u>United States v. Marolf</u>, 277 F.3d 1156, 1160 (9th Cir. 2002)(citation omitted).

6

a court's refusal to grant an award of § 7430 costs an abuse of discretion.[4]

B.   <u>The Position of the Commissioner Was Not Substantially Justified.</u>

To recover reasonable administrative and litigation costs under § 7430, a taxpayer must be the "prevailing party."[5] In addition to showing that he has exhausted his administrative remedies — not an issue in the instant case — a taxpayer must show that he substantially prevailed either on the "amount in controversy" or "the most significant issue or set of issues presented."[6] A taxpayer is not a "prevailing party" if the United States establishes that the Commissioner's position was "substantially justified."[7] Here, given the Commissioner's total capitulation shortly before trial, there can be no question that Petitioners substantially prevailed on both the amount in controversy and the most significant set of issues presented, i.e., that the FDIC did not cancel the Owens loan in 1994 (or any other year for that matter) and that the assertion of a negligence penalty against Petitioners was baseless. Thus, the only question remaining is whether the Commissioner was nevertheless

---

[4] See <u>Portillo v. Commissioner ("Portillo II")</u>, 988 F.2d 27, 28-29 (5th Cir. 1993).

[5] 26 U.S.C. § 7430(c)(4)(A)(i).

[6] 26 U.S.C. § 7430(c)(4)(A)(i)(I)-(II).

[7] <u>Id.</u> § 7430(c)(4)(B); <u>see</u> <u>also</u> <u>Sherbo v. Commissioner</u>, 255 F.3d 650, 653 (8th Cir. 2001).

7

substantially justified in the position taken relative to discharge-of-indebtedness income in 1994.

For purposes of determining whether the Commissioner's position was substantially justified, the fact that he lost the case — here, conceded it — is not alone sufficient.[8]  It is, however, a factor for consideration.  As instructed by the Supreme Court in <u>Pierce v. Underwood</u>, the position of the Commissioner is substantially justified if it has a reasonable basis both in fact and in law.[9]  As this standard is conjunctive, a position is not substantially justified if it lacks a reasonable basis in either fact or law.

In concluding that the Commissioner was substantially justified in maintaining that Petitioners had discharge-of-indebtedness income in 1994, the Tax Court observed that the issue is "extremely fact specific, often turning on the subjective intent of the creditor as manifested by an objectively identifiable event," citing <u>Friedman v. Commissioner</u>,[10] and <u>Cozzi v. Commissioner.</u>[11]  The Tax Court pointed to the FDIC's issuance and filing of the 1099-C with respect to the Owens loan as an identifiable (albeit non-dispositive) event, because, to the court,

_____

[8] <u>Maggie Mgmt. Co. v. Commissioner</u>, 108 T.C. 430, 443 (1997).

[9] 487 U.S. 552, 565, 108 S.Ct. 2541, 2550 (1988).

[10] 75 T.C.M. (CCH) 2383 (1998), <u>aff'd,</u> 216 F.3d 257 (6th Cir. 2000).

[11] 88 T.C. 435, 445-448 (1987).

8

it evidenced "an intention to cancel the loan" –– not, we must point out, actual cancellation of the loan. Indeed, the Tax Court recognized inconsistent evidence of cancellation in the November 7, 1994 letter from the principal of AMRESCO to Owens, observing in a footnote, that "[w]hile the term 'dormant' does not necessarily signify an intent on the part of the FDIC to cancel the loan, the language of the FDIC's 'Dormant Account Status Approval Form' for the [Owens] loan in some respects evidences such an intent (e.g., 'This memorandum is a request for Authorization to write off the remaining balance')" (emphasis added). In light of all the operative facts, especially those just mentioned, we conclude that the Tax Court clearly erred in finding the 1099-C and related documentation from the FDIC to be an "identifiable event" sufficient to credit the Commissioner's position with a reasonable basis in both law and fact.

First, the Tax Court equates the intention to act in the future with the actual performance of the act: AMRESCO's recommendation to cancel the Owens loan and even the FDIC's intent to cancel it are not synonymous with the FDIC's actually canceling that debt. Second, and more significant, the record confirms that no agent of the IRS bothered to follow up on the intention –– the evidence of which postdated the 1099-C –– to verify actual cancellation. Whether this failure resulted from overwork, deliberate indifference, inability to distinguish intention to do something in the future from doing something in the present, or any

9

other reason, cause, or excuse, the fact remains that the IRS dropped the ball.  Given the consistent insistence of Petitioners that the Owens loan had never been canceled, the failure of the IRS to take the last logical step and verify cancellation <u>vel</u> <u>non</u> is antithetical to the conclusion that the Commissioner had a reasonable basis in fact to issue the deficiency notice and tenaciously cling to it throughout the administrative process and the responsive pleadings phase of the lawsuit, recanting only shortly before trial by conceding the case.

The parties in their briefs and the Tax Court in its opinion discuss at length the pair of cases from this court that are directly on point and controlling:  <u>Portillo I</u>,[12] and <u>Portillo II</u>.[13]  Briefly, <u>Portillo I</u> involved a deficiency assessed against a taxpayer who, as a painting subcontractor, had received a Form 1099 from a general contractor for whom the taxpayer performed painting services.  The taxpayer insisted that the 1099 erroneously stated an inflated quantum of payments from the contractor during the tax year in question.  Agents of the IRS contacted the contractor who had issued the 1099 and were told by him that the larger figure was correct, claiming that, in addition to paying the taxpayer with checks (the total amount of which equaled exactly the lesser amount of income claimed by the taxpayer on his tax return), he had made

---

[12] <u>Portillo v. Commissioner</u>, 932 F.2d 1128 (5th Cir. 1991).

[13] <u>Portillo v. Commissioner</u>, 988 F.2d 27 (5th Cir. 1993).

10

cash payments as well. Instead of proceeding to verify which version of the relevant facts was correct, the IRS agent took it upon himself to make a credibility call, electing to believe the contractor rather than the taxpayer.

In the ensuing litigation over the deficiency assessed to the subcontractor as taxpayer, we reversed judgment for the Commissioner and held that the subject 1099, unverified except by the agent's impermissible credibility call, was insufficient. Subsequently, when the taxpayer sought to recover costs from the Commissioner under § 7430, the Tax Court determined that, despite having lost the case, the Commissioner had nevertheless taken a substantially justified position in reliance on the contested 1099 and the testimony of its issuer. In Portillo II, we again reversed, holding that the Tax Court had abused its discretion in denying § 7450 litigation costs to the Taxpayer on the facts of the case. Noting that the panel in Portillo I had characterized the deficiency notice based on the unsubstantiated and unreliable 1099 as "clearly erroneous," we stated in Portillo II that "[t]here can be no clearer indication from this Court that the government's position in relying on such an unsupported notice of deficiency was not justified."[14] We went on to conclude that "[t]he unsubstantiated and unreliable 1099 Form submitted to the IRS by [the contractor] was insufficient to form a rational foundation for

_____

[14] Portillo II, 988 F.2d at 29.

11

the tax assessment against the Portillos" making the assessment arbitrary and erroneous.[15]

In the instant case, the Tax Court viewed <u>Portillo II</u> as distinguishable, relying on the difference between the investigation and ensuing credibility call by the IRS agent in <u>Portillo</u>, on the one hand, and the IRS agent's reliance on the documentation obtained from the FDIC in this case, on the other hand. Given the facts that (1) Petitioners here repeatedly insisted from the outset that the 1099-C was issued in error by the FDIC because the loan was never canceled, (2) the documentation obtained from the FDIC supports no conclusion other than an <u>intention</u> to cancel the loan rather than its actual cancellation, and (3) the utter failure of the IRS to contact the FDIC and obtain a simple, factual determination whether the loan had in fact been canceled in 1994, there is no distinguishable difference in fact or in law from the situation in the <u>Portillo</u> cases: issuance of a taxpayer-contested 1099 followed by a deficiency assessment grounded in nothing more than the agent's credibility call in a swearing match between the issuer and the recipient of that document. Indeed, the Commissioner might have been on even slightly more solid ground in <u>Portillo</u> because there the agent at least contacted the issuer of the 1099 and obtained a statement; here, the agent failed to contact the FDIC at all. This is not the

_____

[15] <u>Id.</u>

12

stuff of which a reasonable basis both in law and in fact is made, absent which, as a matter of law, the position of the Commissioner cannot be "substantially justified."

### III. Conclusion

The Commissioner's reliance on the contested 1099-C and documentation from the issuer reflecting nothing more than an intention to cancel the Owens loan at some future time fails to provide a reasonable basis in either fact or law. Absent that, the deficiency assessment, and the litigating position of the Commissioner, was not substantially justified. Consequently, Petitioners were prevailing parties in the underlying litigation and are entitled to recover their administrative and litigation costs from the Commissioner on both the penalty issue and the cancellation-of-indebtedness issue, pursuant to the provisions of § 7430. The ruling of the Tax Court to the contrary constitutes abuse of discretion and must, therefore, be reversed.[16]

Although we affirm the judgment of the Tax Court to the extent it awarded Petitioners $1,449.58 in connection with the penalty issue, we reverse the court's denial of eligible costs of $8,697.49. We therefore remand this case with instructions to the Tax Court to modify its judgment by increasing the amount of the

---

[16] See United States v. Logan, 861 F.2d 859, 866 n.5 (5th Cir. 1988)("Of course, 'abuse of discretion' is a phrase which 'sounds worse than it really is'; it is simply a legal term of art which carries no pejorative connotations of a professional or personal nature.")(citation omitted).

13

award to Petitioners by $8,697.49, plus reasonable amounts, consistent with the provisions of § 7430, for additional litigation costs incurred in this appeal and in the Tax Court on remand. AFFIRMED in part, REVERSED in part, and REMANDED WITH INSTRUCTIONS.

14