**Michael S. JUNE, Plaintiff–Appellant,**

v.

**TOWN OF WESTFIELD, NEW YORK, and Village of Westfield, N.Y., Defendants–Appellees.**

No. 03–7723.

United States Court of Appeals, Second Circuit.

Argued: Jan. 8, 2004.

Decided: June 2, 2004.

Leigh Anderson (David J. Seeger, Alison L. Mical, of counsel), Buffalo, NY, for Appellant.

James L. Magavern (Magavern, Magavern & Grimm, L.L.P.), Buffalo, NY, for Appellee.

Before: VAN GRAAFEILAND, SACK, and RAGGI, Circuit Judges.

SACK, Circuit Judge.

The plaintiff, Michael June, appeals from a summary judgment granted by the United States District Court for the Western District of New York (Richard J. Arcara, *Judge*) in favor of the defendants, the Town of Westfield and the Village of Westfield,[1] on June's claims that the defendants violated provisions of the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA").

## BACKGROUND

In the mid–1990s, a stretch of Mt. Baldy Road, in Westfield, New York, was in danger of collapse. Its shoulder was narrow, dropping steeply to a gully below. The embankment on which it was built had eroded to within a few feet of the road.

In 1997 and 1998, the defendant Town of Westfield ("Town") therefore deposited fill, consisting of dirt, gravel, sand, rocks, and cement, to shore up the embankment. In so doing, the Town expanded the embankment adjoining the road and filled in part of the gully. June asserts that the defendants used several tens of thousands of cubic yards of fill in the process.

On November 7, 2001, June brought this action in the United States District Court for the Western District of New York. He alleged, first, that the defendants had discharged into a "water of the United States" solid waste, consisting of, among other substances, fill materials, without a permit, in violation of 33 U.S.C. § 1311 and the permitting provisions of section 404 of the CWA, 33 U.S.C. § 1344. Second, he alleged that the defendants discharged storm waters associated with in-dustrial activity from a "point source" into navigable waters without a permit, in violation of 33 U.S.C. § 1311 and the permitting provisions of section 402 of the CWA, 33 U.S.C. § 1342. Third, June alleged that the defendants engaged in the open dumping of solid waste in violation of section 4005 of the RCRA, 42 U.S.C. § 6945(a).

The defendants interposed two threshold defenses to June's suit and moved for dismissal or alternatively for summary judgment on the basis of them. The defendants asserted that their discharge of fill material was exempt from the permitting provisions of sections 1342 and 1344 because the defendants' activity fell under the maintenance exemption of 33 U.S.C. § 1344(f)(1)(B), and that, in any event, both the CWA and the RCRA claims were barred because the discharge was completed before suit was filed and therefore could not constitute an ongoing violation necessary for a violation of the CWA, *see Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 59, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), or the RCRA, *see S. Rd. Assocs. v. Int'l Bus. Machs. Corp.,* 216 F.3d 251, 254–55 (2d Cir.2000). On the basis of both these defenses, the district court granted summary judgment to the defendants, concluding that the activities of which June complained fell within the section 1344(f) maintenance exemption and that June had failed to satisfy his burden of coming forward with evidence to establish an ongoing violation of either the CWA or the RCRA.

June appeals.

## DISCUSSION

June argues that the maintenance exception does not apply because there was

---

1. It appears that the Village is named as a defendant in this action solely because it owns the land involved in the dispute.

no pre-existing structure upon which maintenance might have been performed by the defendants and that there is an ongoing violation as required by both the CWA and the RCRA.

## I. Standard of Review

We review a district court's grant of summary judgment *de novo,* construing "the evidence in the light most favorable to the non-moving party and ... draw[ing] all reasonable inferences in its favor." *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 165–66 (2d Cir.2003). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

## II. The Clean Water Act Claims

### A. The CWA Claims Under 33 U.S.C. §§ 1342 and 1344

June alleges that the defendants were dumping "fill material" into waters of the United States without a permit, in violation of 33 U.S.C. § 1311 and the permitting provisions of 33 U.S.C. § 1344, and that the defendants were discharging "pollutants" from a point source without a National Pollutant Discharge Elimination System permit, in violation of 33 U.S.C. § 1311 and the permitting provisions of 33 U.S.C. § 1342.

Under 33 U.S.C. § 1311, the discharge of any pollutant into navigable waters of the United States is prohibited except where authorized by permit. Section 1344(a) authorizes the Secretary of the Army to issue permits for "the discharge of dredged or fill material into the navigable waters" of the United States. 33 U.S.C. § 1344(a). Section 1342(a), which

sets forth the National Pollutant Discharge Elimination System, authorizes the Secretary of the Army, after opportunity for public hearing, to issue a permit for the discharge of any pollutant or combination of pollutants into the navigable waters of the United States. 33 U.S.C. § 1342(a)(1).

### B. The Maintenance Exemption

■ The maintenance exemption of section 1344 states:

> Except as provided [by a paragraph of the statute not relevant to June's claims], the discharge of dredged or fill material—
>
> ...
>
> for the purpose of maintenance, including emergency reconstruction of recently damaged parts, of currently serviceable structures such as dikes, dams, levees, groins, riprap, breakwaters, causeways, and bridge abutments or approaches, and transportation structures[,]
>
> ...
>
> is not prohibited by or otherwise subject to regulation under this section ....

33 U.S.C. § 1344(f)(1).[2] The defendants argue that Mt. Baldy Road, for the repair of which they were using fill, was a "currently serviceable ... transportation structure," that the purpose of their fill activity was to maintain it, and that the work was therefore exempt from the permit requirement of sections 1342 and 1344. June argues that Mt. Baldy Road was not a "structure" under section 1344(f)(1)(B). We agree with the defendants.

Neither party has called to our attention case law addressing the definition of the terms "structure" or "transportation structure" in this section, and we have discovered none ourselves. But we think that the scope of the terms in this context is clear: An embankment supporting a road for transit by motor vehicles is a "transporta-

---

**2.** The maintenance exemption applies to violations of section 1342, as well. *See* 33 U.S.C.

§ 1344(f)(1)(B).

tion structure." To treat a thoroughfare like Mt. Baldy Road otherwise would be to thwart the apparent purpose of the provision: to permit routine government maintenance of transportation, public water-supply, and similar facilities without the expense, consumption of time, and consequent danger to people and facilities that would inhere in a requirement for a prior permit. Accepting for these purposes the observation by other courts that exemptions to the CWA should be construed narrowly, *see United States v. Brace,* 41 F.3d 117, 124 (3rd Cir.1994), *cert. denied,* 515 U.S. 1158, 115 S.Ct. 2610, 132 L.Ed.2d 854 (1995); *United States v. Akers,* 785 F.2d 814, 819 (9th Cir.), *cert. denied,* 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *United States v. Huebner,* 752 F.2d 1235, 1240–41 (7th Cir.), *cert. denied,* 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985); *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 925 n. 44 (5th Cir.1983), we nonetheless conclude that Mt. Baldy Road and the embankment that supported it were "transportation structures."

■ We note that 33 C.F.R. § 323.4(a)(2), a regulation propounded by the Army Corps of Engineers in connection with procedures to be used for issuing permits for discharges of dredged or fill material into waters of the United States, provides that "[m]aintenance does not include any modification that changes the character, scope, or size of the original fill design," *id.* Therefore, if the maintenance of Mt. Baldy Road changed "the character, scope, or size of the original fill design," the maintenance exemption was inapplicable and a permit was required. If, as June asserts, the defendants "dumped several tens of thousands of cubic yards of fill into the overflow tributary," Appellant's Br. at 17, then it is possible that their "modification . . . change[d] the character, scope, or size of the original fill design" of the embankment adjacent to Mt. Baldy Road. Although June intimates that the scope of the project was too large to constitute routine maintenance, he did not specifically raise this issue or discuss the federal regulation supporting this argument in either the district court or on appeal. He therefore cannot claim benefit of such a theory here. *See Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (stating that Courts of Appeal need not consider issues raised for the first time on appeal).[3] Because the only ground on which June challenges the district court's determination that the defendant qualified for the maintenance exemption is unavailing, we affirm the district court's grant of summary judgment on June's CWA claims.[4]

---

3. In order to be exempt from the section 404 permit requirement, the defendants must show not only that their activities are exempt from the permitting requirement under the maintenance or another applicable provision but also that their activities, thus exempt, do not fall under the "recapture" provision, 33 U.S.C. § 1344(f)(2). The "recapture" provision, 33 U.S.C. § 1344(f)(2), which removes the availability of the section 1344(f)(1) exemption from permitting requirements, provides:

> Any discharge of dredged or fill material into the navigable waters incidental to any activity having as its purpose bringing an

area of the navigable waters into a use to which it was not previously subject, where the flow or circulation of navigable waters may be impaired or the reach of such waters be reduced, shall be required to have a permit under this section.

33 U.S.C. § 1344(f)(2). It is clear, even construing the facts in the light most favorable to June, that the "purpose" of the defendants' rehabilitation project was not to "bring[ ] an area of the navigable waters into a use to which it was not previously subject." *Id.*

4. Because we conclude that the maintenance exemption applies, we need not and do not decide whether the filling activities com-

## III. The RCRA Claim

June also argues that the defendants engaged in the open dumping of solid waste in violation of section 4005 of the RCRA, 42 U.S.C. § 6945.[5]

■ In *South Road,* 216 F.3d at 254–55, we addressed a lawsuit that was, in relevant part, brought under the same provisions of the RCRA as those under which June brings suit: 42 U.S.C. § 6972, permitting citizen law suits under the Act, and 42 U.S.C. § 6945(a), prohibiting certain open dumps and open dumping. We concluded that "[w]hat is prohibited by the statute and the [associated] regulation [40 C.F.R. § 257.3–4] (read together) is the act of introducing a substance that causes . . . exceedances, not the action of the [toxic substance] on the environment." *Id.* at 256. A "historical act cannot support a claim for violation of 42 U.S.C. § 6945(a)." *Id.* at 257.

June fails to allege that, at the time of the filing of his lawsuit, the defendants "continued to introduce substances that made the . . . exceedances worse." *Id.* His allegations were of a purely historical act. As the district court held, June's RCRA claim therefore fails as a matter of law.

plained of, which were completed before June's lawsuit was filed, constitute an ongoing violation as required by the CWA. *See Gwaltney of Smithfield,* 484 U.S. at 59, 108 S.Ct. 376 ("[C]itizens, unlike the Administrator, may seek civil penalties only in a suit brought to enjoin or otherwise abate an ongoing violation"); *cf. S. Rd. Assocs.,* 216 F.3d at 254–55 (2d Cir.2000) (discussing the RCRA and stating that "a defendant's current activity at the site is not a prerequisite for finding a current violation under [the citizen action provision of the RCRA]. The inquiry required . . . is whether the defendant's actions—past or present—cause an ongoing violation of RCRA."). Most courts that have addressed the question have concluded on the facts before them that the continuing presence of a pollutant constitutes a continuing discharge

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

of the pollutant into adjacent water under the CWA. *See, e.g. Atl. States Legal Found., Inc. v. Hamelin,* 182 F.Supp.2d 235, 248 n. 20 (N.D.N.Y.2001) (collecting cases).

5. Section 6945 of the RCRA states:

[A]ny solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste is prohibited, except in the case of any practice or disposal of solid waste under a timetable or schedule for compliance established under this section. The prohibition contained in the preceding sentence shall be enforceable under section 6972 of this title [the citizen suit provision] against persons engaged in the act of open dumping.

42 U.S.C. § 6945(a).