07-3454-cv, 07-3462-cv
Mather v. Willet Dairy

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: July 18, 2008                                   Decided: July 30, 2008)

Docket Nos. 07-3454-cv(L), 07-3462-cv(CON)

_____

FRED COON, on behalf of his wife, Pearl Coon, deceased, KAREN STRECKER, SCOTT
MATHER and CONNIE MATHER, as Parents and Natural Guardians of S.M., a Minor Child,
KENNETH KEPPEL, KAREN KEPPEL, and DALE MANGAN,

*Plaintiffs-Appellants*,


– v. –

WILLET DAIRY, LP, WILLET DAIRY, LLC, WILLET DAIRY, INC.,
DENNIS ELDRED and SCOTT ELDRED,

*Defendants-Appellees.*
_____

Before: NEWMAN, CALABRESI, and B.D. PARKER, *Circuit Judges.*
_____

Appeal from a judgment of the United States District Court for the Northern District of

New York (Scullin, *J.*) granting summary judgment for Defendants-Appellees on all of Plaintiffs-

Appellants' claims in a suit alleging, *inter alia*, that Defendants-Appellees' large dairy operation

emitted hazardous pollutants in violation of the Clean Water Act (CWA).  We hold that

Plaintiffs-Appellants waived their claim as to any CWA violations before July 1999, that the

CWA permit shield provision prohibited this action as to any claims between July 1999 and December 2006, and that Plaintiffs-Appellants' Resource Conservation and Recovery Act claims were prohibited under that statute's non-duplication provisions. Additionally, we join other circuits in concluding that Defendants-Appellees did not need a permit to construct a stock pond on land already in use for farming under 33 U.S.C. § 1344(f)(2). Accordingly, the judgment of the District Court granting summary judgment on all of Plaintiffs-Appellants' claims is AFFIRMED.

————————————————————————

GARY A. ABRAHAM, Office of Gary A. Abraham, Allegany, N.Y., ALAN J. KNAUF, Knauf Shaw LLP, Rochester, N.Y., *for Plaintiffs-Appellants*.

DAVID L. COOK, Nixon Peabody LLP, Rochester, N.Y., *for Defendants-Appellees*.

————————————————————————

**PER CURIAM:**

Plaintiffs-Appellants, a group of neighbors in East Genoa, New York ("Appellants"), appeal the decision of the United States District Court for the Northern District of New York (Scullin, *J.*) granting Defendants-Appellees Willet Dairy and its owners Scott and Dennis Eldred (collectively "Willet Dairy") summary judgment on all of Appellants' claims. *Coon v. Willet Dairy*, LP, Nos. 5:02-cv-1195, 5:04-cv-917, 2007 U.S. Dist. LEXIS 51718 (N.D.N.Y. July 17, 2007). In August 2004, Appellants brought a citizen suit pursuant to 33 U.S.C. §1365, claiming, *inter alia*, that Willet Dairy violated the Clean Water Act (CWA), 33 U.S.C. § 1251 *et seq.*, by failing to manage its animal waste and silage leachate properly, and otherwise causing environmental and public health hazards. On appeal, Appellants contend that summary judgment

2

was improper because (1) Willet Dairy operated without a permit prior to July 1999 in violation of the CWA, (2) Willet Dairy discharged pollutants into navigable waterways after July 1999 in violation of its permit and the CWA, (3) Willet Dairy's operations violated the Resource Conservation and Recovery Act of 1976 (RCRA), and (4) Willet Dairy diverted Schaeffer Brook without a permit in violation of the CWA. We consider these issues in turn, reviewing *de novo* the District Court's grant of summary judgment. *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000). In doing so, we recognize that the first three issues can be dealt with under this Court's existing precedents, but that the Appellants' stream diversion claim requires us to interpret, for the first time in our Circuit, 33 U.S.C. § 1344(f)(2) as it relates to the construction of stock ponds.

First, Appellants contend that Willet Dairy violated the CWA by operating as a Concentrated Animal Feeding Operation ("CAFO") without a permit before July 1999. Appellants, however, failed to raise this claim properly before the District Court, and therefore we deem it waived. *See Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 109 (2d. Cir. 2002). Moreover, even if Appellants had sufficiently argued this claim below, Willet Dairy's failure to have a permit before July 1999 is a "wholly past violation," which cannot be the subject of a CWA citizen suit. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57-61 (1987). Because Willet Dairy has had permit coverage under New York Department of Environmental Conservation's ("DEC") general permit since July 1999, there is no "evidence from which a factfinder could find a likelihood of continuing violations." *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*, 989 F.2d 1305, 1312 (2d Cir. 1993).

Second, the District Court correctly found that Willet Dairy was shielded by its "permit shield" from citizen suits for violations between July 1999 and December 2006. *Coon*, 2007 U.S. Dist. LEXIS 51718 at *8-13. The "permit shield," embodied in 33 U.S.C. § 1342(k), protects a CWA permit holder from facing suits challenging the adequacy of its permit. *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 357 (2d Cir. 1994) (noting that the Supreme Court found the purpose of the permit shield was to relieve permit holders from having to litigate whether their permits are sufficiently strict) (citation omitted). That is, compliance with an authorized permit is deemed compliance with CWA, so as long as Willet Dairy was acting in accordance with its permit it could not be liable in a citizen suit for CWA violations. *See id.* Because under the terms of the renewed permit, Willet Dairy did not have to be fully compliant with its permit until December 2006 — after the lawsuits' initiation — the District Court properly held that there could be no viable CWA citizen suit against Willet Dairy.

There is no indication, as Appellants contend, that there were any permit requirements for which a citizen could bring suit before the date Willet Dairy had to be in full compliance with its permit.[1] Further, though Appellants correctly note that Willet Dairy was supposed to be on a schedule toward compliance, they do not offer particular evidence showing how Willet Dairy failed to meet any specific deadlines. Finally, the permit provides that the *DEC* has the authority to monitor and sanction Willet Dairy before its compliance deadline.[2]

---

[1] For example, there is no indication that Willet Dairy had to implement the generic requirements in the DEC general permit immediately.

[2] We recognize that limiting citizen suits in this respect can cause serious injury to persons living near environmental dangers if the DEC and other environmental regulatory agencies are unable to monitor and sanction polluters effectively before compliance deadlines. Given that Willet Dairy had more than seven years before it was required to comply fully with its permit, that means no citizen could have brought a suit over that entire time for CWA violations. Such

4

Because the DEC's renewed general permit clearly extends the compliance deadline for large CAFO's, such as Willet Dairy, until December 2006, we also reject Appellants' claim that Willet Dairy had to be in full compliance by July 2004.[3]

Third, we find that the District Court properly granted summary judgment on Appellants' RCRA claims. *Coon*, 2007 U.S. Dist. LEXIS 51718 at *14-17. The RCRA establishes a regulatory scheme for the treatment, disposal, and storage of solid and hazardous wastes. *See Conn. Coastal*, 989 F.2d at 1313. The RCRA also provides that "[n]othing in this chapter shall be construed to apply to . . . any activity or substance which is subject to the [CWA] . . . except to the extent that such application (or regulation) is not inconsistent with the requirements of [the CWA]." 42 U.S.C. § 6905(a). Appellants' RCRA claims are based on the same activities and substances that the CWA covers. Therefore, pursuant to Section 6905(a), the RCRA cannot apply to these activities and substances in this instance because any such application would be inconsistent with the CWA's "permit shield."

---

regulatory agencies may be unable to ensure that polluters are acting in accordance with their compliance schedules, given the numerous violations likely to occur. Consequently, limiting the ability of "private attorneys general" to bring suit until after compliance deadlines may be inadequate for ensuring the safety of our environment and for protecting citizens from serious injury. But that is the remedy that Congress has provided and to which we are bound. *See Alexander v. Sandoval*, 532 U.S. 275 (2001).

[3] Appellants argue that the extended compliance deadline does not apply to Willet Dairy because of a provision in the renewed permit stating: "Existing Permits. Unless otherwise notified by the [DEC], coverage under this permit does not suspend, revoke, or modify the provisions of any other permit issued by the Department." This provision, however, does not apply to the original general permit (GP-99-01), as it was, in effect, nullified and superceded by the issuance of the new permit (GP-04-02). Otherwise, the express language of the permit — that "existing Large CAFOs" have an extended compliance deadline — would be meaningless as the new permit could not change the deadline for any existing CAFOs.

Lastly, we turn to Appellants' contention that Willet Dairy needed a permit before it diverted Schaeffer Brook to create a stock pond, which allegedly caused harm to ponds and streams on Appellants' properties. This is a new issue for our Circuit and thus we write to clarify our position.

Before diverting a stream, the CWA generally requires that a party obtain a permit from the U.S. Army Corps of Engineers ("the Corps"), which administers the section of the CWA that governs discharges of dredged or fill material. *See* 33 U.S.C. §§ 1344(a),(d). In December 1999, Willet Dairy diverted the upstream reach of the Schaeffer Brook without contacting the Corps. After complaints about the diversion, Willet Dairy sought a jurisdictional determination from the Corps on whether it needed a permit. The Corps then inspected, and its answer was no.

The Corps's decision that it did not have jurisdiction over the pond project stemmed from an exception to Section 1344(a) that allows a party to proceed without a permit if diverting the navigable water is "for the purpose of construction or maintenance of farm or stock ponds . . . ." 33 U.S.C. § 1344(f)(1)(C); 33 C.F.R. § 323.4(a)(3). There is an exception to this exemption, however, called the "recapture provision," which requires a permit if the diversion project is for the purpose of bringing an area "into a use to which it was not previously subject." 33 U.S.C. § 1344(f)(2). Appellants contend that because Willet Dairy was constructing a *new* pond, it was using the area for a *new* use, so the activity falls within the recapture provision.

Other courts have, however, interpreted the recapture provision to mean that a party needs a permit only when it is starting a new farming operation, not when it is building a new pond to support an existing farming operation. *See Conant v. United States*, 786 F.2d 1008, 1010 (11th Cir. 1986) (per curiam) ("The plain purpose of the statute and regulations is to allow people to

build ponds in connection with a previously established farming operation."); *In re Carsten*, 211 B.R. 719, 736 (Bankr. D. Mont. 1997) ("Consequently, as applied to such construction the 'new use' provision of § 1344(f)(2) cannot mean . . . that if a farm pond did not in the past exist, then the construction of such constitute a new use sufficient to invoke the recapture provision. Again, such an interpretation would impermissibly render the pond construction exemption a mere superfluity.").[4] We agree for substantially the reasons stated by these courts.

Any other reading would make the statute incoherent. Given that Section 1344(f)(1)(C) provides a permit exemption for the construction of a stock pond, which is by definition new, that section would be rendered meaningless by an interpretation of the recapture provision that required permits for all new uses, including new ponds. Moreover, even if there was ambiguity over the scope of the recapture provision, we would give deference to the agency interpretation that the recapture provision did not apply in this instance. *Cf. Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Willet Dairy, therefore, did not need a permit to divert Schaeffer Brook to construct the stock pond, and summary judgment on this claim was proper.

We have carefully considered all of Appellants' claims, and we find them to be without merit. Accordingly, the judgment of the District Court is AFFIRMED.___

---

[4]Appellants attempt to distinguish the facts of their case from those of *Carsten*, noting that in *Carsten* the farm dredged a shallow marsh that was already being used as a watering hole to create a pond for its livestock. *In re Carsten*, 211 B.R. at 721. This observation is irrelevant, however, because we find that the creation of an entirely new farm pond, even where no similar feature existed before, is permissible under the recapture provision as long as it is constructed on an existing farm operation.